936 F.2d 159
 David MOORE; Ernest Aldridge; Lynn Bolden; Chester
Bright; Addie Clark; Willie Farrow; Ruth Mann; Timothy
Moore; James Parker, Sr.; Velma Roland; David Williams,
Jr., on behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
BEAUFORT COUNTY, NORTH CAROLINA; Beaufort County Board of
County Commissioners; Ledrue Buck, in his capacity as
chairman of the Beaufort County Board of County
Commissioners; Frank Bonner; Cecil Cherry, Jr.; Arthur
Lee Moore; Marion Dilday, in their capacity as
Commissioners of Beaufort County, North Carolina, and their
successors and agents; Beaufort County Board of Elections;
Mary Van Dorp, Chairman of the Beaufort County Board of
Elections and her successors and agents; Charlotte
Nicholls, in her capacity as Supervisor of the Beaufort
County Board of Elections, Defendants-Appellants.
 No. 90-3122.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 8, 1991.
Decided June 4, 1991.
As Amended June 21, 1991.
 
 Douglas A. Riley, Tharrington, Smith & Hargrove, argued, Raleigh, N.C. (Michael Crowell, Tharrington, Smith & Hargrove, on the brief, Raleigh, N.C.), for defendants-appellants.
 John West Gresham, Ferguson, Stein, Watt, Wallas, Adkins & Gresham, argued, Charlotte, N.C. (Leslie J. Winner, Anita S. Hodgkiss, Ferguson, Stein, Watt, Wallas, Adkins & Gresham, on the brief, Charlotte, N.C.), for plaintiffs-appellees.
 Before RUSSELL, Circuit Judge, MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 RICHARD L. WILLIAMS, District Judge:
 Appellant Beaufort County appeals from the decision of the district court enforcing a settlement agreement. We find that the parties reached a complete agreement settling this case, and therefore affirm the decision below.
 I.
 Black voters of Beaufort County, North Carolina brought this class action under section 2 of the Voting Rights Act of 1965, 42 U.S.C. Sec. 1973. Although approximately 30% of the residents of the County are black, no black candidate has been elected to the five-member Board of County Commissioners (the "Board") in at least thirty years. The plaintiffs filed their complaint in April 1988 claiming that the County's system of at-large elections denied black voters an equal opportunity to elect candidates of their choice.
 In early 1989, the parties entered into settlement negotiations based on a limited voting election plan. Under limited voting, voters are limited in the number of votes they can cast. For example, if three seats were up for election, all the candidates would appear on the same ballot, but each voter would be limited to voting for a single candidate. Limited voting allows minorities to rally around a single candidate and improve his or her chance of election.
 On April 4, 1989, the Board met with their attorney Mr. Crowell to discuss resolving the litigation. On April 5, the Board announced to local media that they would meet on April 18, 1989 to approve a plan in response to the voting rights suit. On April 18 the Board met in executive session. After discussing the lawsuit, the Board agreed to settle the suit by agreeing to a plan of limited voting. The Board instructed Mr. Crowell to negotiate the settlement details with the plaintiffs.
 Shortly after that meeting, Mr. Crowell telephoned Ms. Winner, counsel for the plaintiffs. He stated that the Board had agreed to settle the case by expanding the Board to seven members, who would serve four-year terms. The Board proposed four-three staggered elections using limited voting whereby each voter would cast only one vote at each election. The Board offered to commence the new election method in 1990.
 This oral offer to settle the case was followed by a letter to plaintiff's counsel Anita Hodgkiss on April 19, 1989. Mr. Crowell's letter detailed the settlement terms, and stated that "my client, the Beaufort County Board of Commissioners, is willing to have the court order a new method of electing the board in order to resolve [this] case without further litigation." The limited voting election plan was substantially the same as that presented to Ms. Winner by phone. Mr. Crowell asked counsel to "discuss this election with your clients and let me know whether it would be acceptable to them."
 Plaintiffs met with their counsel on April 24 and agreed to accept defendant's offer to settle the case. On April 26, 1989, Ms. Winner informed Mr. Crowell that her clients accepted the Board's offer. Both attorneys agreed that Mr. Crowell would draft the motion for entry of consent judgment and the consent judgment itself. On April 28, 1989, Ms. Winner received a draft of these documents from Mr. Crowell. The draft provided for elections in the same manner as described in the prior phone conversations and the April 19 letter. The draft also provided that "Plaintiffs' application for attorney's fees, if any, shall be submitted within 90 days of entry of this Order."
 Ms. Winner made several technical and grammatical changes. She modified stipulation six of the judgment and order to read: "the present method of electing the Board of Commissioners has [replacing "would have been considered to have"] the effect of denying black voters an equal opportunity to elect candidates of their choice contrary to the provisions of [replacing "as"] Section 2 of the Voting Rights Act as ["is"] currently construed." This change made paragraph six consistent with the wording of paragraph two of the Order and Decree portion of the submission.
 After making these modifications, which did not alter the limited voting remedy contemplated by the parties, Ms. Winner returned the draft to Mr. Crowell. Mr. Crowell's office incorporated the changes suggested by Ms. Winner, and reprinted the documents on bond paper. Unlike the first documents, these documents were not stamped "DRAFT". Ms. Winner received the revised documents on or about May 1, 1989. She reviewed both documents, signed them, and returned them to Mr. Crowell for entry with the court. She attached a note to Mr. Crowell which stated "please send me a signed & "filed" copy of this for my records."
 Rather than sign and file the documents, Mr. Crowell presented them to the Board at their regularly scheduled meeting on May 2, 1989. The Board expressed dissatisfaction with the wording of the admission of the section 2 violation, and expressed concern about liability for attorney's fees. On May 3, Mr. Crowell called Ms. Winner to convey the Board's concerns. He also mailed her a new draft of the consent order which contained different wording concerning the section 2 violation. The new draft also provided that plaintiffs would either apply for attorney's fees by November 15, 1989, or that the parties would reach a separate agreement concerning these fees.
 In May 1989, while Mr. Crowell and Ms. Winner were discussing the issue of attorney's fees, the Board learned of considerable public opposition to limited voting. Therefore, during a meeting on May 22, 1989, in the absence of Mr. Crowell, the Board voted to reject any settlement which utilized limited voting. In a May 23, 1989 press release the Board stated that "limited voting ... is not in the best interest of Beaufort County. This method of election would be confusing to our citizens and could have possible legal ramifications that may be more severe than those alleged by the current litigation."
 The Board refused to honor the terms of the settlement agreement, and plaintiffs moved to enforce the agreement. The district court held a full evidentiary hearing on June 1, 1989. On June 11, 1989, the court granted plaintiff's motion to enforce, but stayed its decision pending appeal to this Court.
 Appellant raises essentially two issues on appeal. First, the Board claims that the district court erred in finding that the parties had agreed upon a settlement. Second, the Board argues that the district court failed to defer to the Board in enforcing a remedial election plan. Because we find these arguments unpersuasive, we affirm the decision below.
 II.
 The Board first contends that the parties never reached a settlement because the parties never agreed upon all the terms. In particular, the Board contends that the parties never resolved two issues: 1) the exact wording of the section 2 violation, and 2) the amount of attorney's fees.
 Enforcement of a settlement agreement involves two distinct inquiries. First, the court should ascertain whether the parties have in fact agreed to settle the case. Once the court determines that the parties have agreed to settle the case, then the court must discern the terms of that settlement. In our view, the district court correctly found that an agreement was reached when Ms. Winner conveyed her client's acceptance of Mr. Crowell's oral offer to settle the case. The court also properly determined that the terms of the settlement were those set forth in the document signed by Ms. Winner on May 1, 1989.
 In deciding whether a settlement agreement has been reached, the Court looks to the objectively manifested intentions of the parties. Piver v. Pender County Bd. of Educ., 835 F.2d 1076, 1083 (4th Cir.1987), cert. denied, 487 U.S. 1206, 108 S.Ct. 2847, 101 L.Ed.2d 885 (1988); Charbonnages De France v. Smith, 597 F.2d 406, 414 (4th Cir.1979); Williams v. Jones, 322 N.C. 42, 366 S.E.2d 433 (1988).
 Here, objective evidence strongly indicates that the parties intended to settle this litigation. Mr. Crowell's April 19 letter stated that the Board was ready to resolve the case. Plaintiffs decided to accept defendant's offer, and Ms. Winner signed a document on bond paper that purported to be the final motion and consent judgment.
 The district court, after conducting a full evidentiary hearing, made Rule 52(a) findings which are controlling unless clearly erroneous. Here, the evidence supports Judge Howard's finding that Mr. Crowell made an oral offer to settle the case on April 18, 1989, and that this offer was confirmed in writing by Mr. Crowell's letter of April 19, 1989. The district court also correctly found that the agreement signed by Ms. Winner on May 1, 1989 represents the final agreement between the parties.[1]
 Although the Board contends that the wording of the section 2 violation was never agreed upon, Mr. Crowell acknowledged that the Board would have had to admit a violation before any new voting plan could be implemented. Mr. Crowell, acting for the Board, and Ms. Winner, acting for the plaintiffs, reached an accord. The document prepared by Mr. Crowell's office and signed by Ms. Winner on May 1 contains the final agreed wording of the violation.
 The Board also contends that the parties never reached an agreement about plaintiffs' attorney's fees. Although Mr. Crowell did initially indicate that he wanted to get attorney's fees "wrapped up in the same package," the record reveals that the parties subsequently agreed that the fee issue would be resolved at a later time.
 Attorney's fees need not be fixed at the time of settlement. See Evans v. Jeff D., 475 U.S. 717, 734, 106 S.Ct. 1531, 1540, 89 L.Ed.2d 747 (1986). Indeed, Ms. Winner testified that she had been involved in other litigation against Mr. Crowell, where settlement was not conditioned upon resolution of attorney's fees. Ms. Winner stated that voting rights cases are routinely settled without the issue of fees being addressed contemporaneously.
 This historical treatment is consistent with what happened in this case. Crowell's offer letter of April 19, 1989 makes no reference to attorney's fees. All the documents drafted by Mr. Crowell contemplate resolving the fee issue separately, at a later time. For example, the document signed by Ms. Winner on May 1, 1989 provided that the fee application would be submitted by November 15, 1989.
 The mid-May negotiations concerning attorney's fees were separate and distinct from the settlement agreement. There was no oral or written agreement that settlement was conditional on the resolution of the fee issue. Moreover, the testimony of Ledrue Buck, the Chairman of the Board, revealed that the Board rejected the limited voting method before they even knew what fees the plaintiffs were seeking. The district court correctly concluded that Mr. Crowell's offer to settle the lawsuit was not contingent on resolving the attorney's fee issue, and that the fee issue was merely the Board's after-the-fact argument to avoid the settlement agreement.
 III.
 The Board also argues that Mr. Crowell was not authorized to enter into a binding settlement agreement. However, the record supports the district court's conclusion that Crowell had both actual and apparent authority to settle the case.
 The district court found that the Board authorized Crowell to settle the case during a meeting in executive session on April 18, 1989. The Board had publicly announced prior to the meeting that they planned to resolve the lawsuit. While the Board members concede that they intended to settle the case using limited voting, the Board members claim that they only authorized Crowell to begin negotiations.
 The district court discounted this testimony, and the record supports this finding. It is uncontested that negotiations had already been underway for several months; therefore, a meeting which simply authorized negotiation would have been pointless. More importantly, Crowell's letter dated April 19, the day after the meeting, detailed an election plan that Crowell stated the Board "would accept." Chairman Buck admits that he received a copy of this letter, yet neither he nor any other Board member acted to correct or clarify Crowell's statement that he was writing on behalf of the Board. In fact, the Board was kept fully apprised of the settlement discussions.
 Once the Board authorized Crowell to settle the case, he was empowered to bind the Board. There is no requirement that the Board sign the final consent decree. See Allen v. Alabama State Bd. of Educ., 612 F.Supp. 1046, 1051 (M.D.Ala.1985), vacated on other grounds, 636 F.Supp. 64 (M.D.Ala.1986), reversed, 816 F.2d 575, reh'g denied, 817 F.2d 761 (11th Cir.1987). It is sufficient that the Board orally offered, through attorney Crowell, to settle the litigation on specific, enforceable terms. Under North Carolina law, public bodies can give instructions to their attorneys to settle litigation, so long as the settlement terms are later entered into the minutes in open session. N.C.Gen.Stat. Sec. 143-318.11(a)(4).
 Additionally, the district court properly found that Crowell had apparent authority to settle the litigation. The general rule is that counsel of record have the authority to settle litigation on behalf of their client. Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 390 (5th Cir.1984).
 Mr. Crowell stated to Ms. Winner that he was acting on behalf of the Board. He never indicated that the settlement offer was contingent upon final acceptance by the Board. Indeed, the signature block on the final consent order provided space for Mr. Crowell's signature, but not for those of the Board members. The Board permitted Mr. Crowell to represent them throughout the settlement process. The Board never acted to limit Crowell's authority, or to dispel the impression that he had settlement authority. These acts were sufficient to give Crowell the apparent authority to settle the case. See Investors Title Ins. Co. v. Herzig, 320 N.C. 770, 360 S.E.2d 786, 788 (1987).
 The trial court correctly concluded that Mr. Crowell was actually authorized to settle the case on behalf of the Board, and that he also openly displayed apparent settlement authority. After extending an unconditional settlement offer, the Board may not avoid the agreement by claiming a subjective belief that no agreement would be final before their formal approval.
 IV.
 On appeal, the Board for the first time contends that the district court erred by not deferring to the Board's judgment concerning the proper remedial election plan. We find this argument unpersuasive.
 The Board cites numerous cases which require district courts to show deference to local legislative bodies, and to give those bodies the first opportunity to revise election methods. These cases have no application here. Judge Howard adopted a voting plan devised by the Board itself. The limited voting plan described by both Mr. Crowell's April 19 letter and the consent order signed by Ms. Winner on May 1 was conceived of and drafted by the Board. In enforcing the settlement agreement, the district court has shown proper deference to the Board.
 Appellant's position would require that district courts modify voting plans each time that local governing bodies have a change of heart. At one point, the Board of Beaufort County felt that limited voting was desirable. Now it does not. The district court is not required to gauge the current sentiment of the Board before implementing a plan that has previously been approved. In enforcing this agreement, the district court will do no harm to the principles of federalism and deference.
 Finally, the Board contends that the district court should not order limited voting because it is contrary to the public policy of North Carolina. However, four jurisdictions in North Carolina have used limited voting in consent decrees (Bladen County, Clinton City Board of Education, the Sampson County Board of Education, and the Town of Benson). The partial limited voting scheme in Bladen County was approved by the state legislature. See Harry v. Bladen County, North Carolina, No. 87-72-CIV-7, at 1 (E.D.N.C. April 21, 1988), and United States v. Bladen County Bd. of Educ., No. 87-101-CIV-7 (E.D.N.C. April 22, 1988).
 At this juncture, the Court will not disallow a limited voting based upon these uncertain and speculative policy concerns. The Board has failed to show that this plan is so contrary to state or federal policy that it cannot be enforced.
 V.
 The district court properly found that the parties agreed to settle this case, and that the terms of the agreement are found in the document signed by Ms. Winner on May 1, 1989. Therefore the decision of the district court is affirmed, and this case is remanded to the district court for submission to the Justice Department for preclearance in accord with section 5 of the Voting Rights Act, 42 U.S.C. Sec. 1973c.
 
 
 1
 AFFIRMED.
 
 
 
 [1]
 Defendant contends that this finding is clearly erroneous because a later draft was exchanged on May 3, 1989, and subsequent changes were discussed. The May 3, 1989 draft is properly considered a counter-offer. Although Ms. Winner did discuss possible changes with Mr. Crowell, these negotiations concerning the counter-offer did not vitiate the final agreement signed on May 1, 1989. Because no further drafts were exchanged, there is no clear enforceable agreement on the new May 3 wording. For example, the draft sets forth two alternatives for resolution of fees, but there is no way to tell which alternative is adopted. The district court's implicit finding that Mr. Crowell's May 3 counter-offer was never accepted by Ms. Winner was not clearly erroneous. Therefore the court properly considered the May 1 documents, which were drafted by Crowell and signed by Winner without modification, the "final" agreement between the parties