**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY, a corporation
of the state of Indiana,
Plaintiff-Appellee,

v.

INFORMATION SYSTEMS,
INCORPORATED; NETWORKS                    No. 94-2633
CORPORATION; ROMA P. MALKANI;
PREM MALKANI,
Defendants-Appellants,

and

DAVID C. CONDRON; JACK J. MORRIS,
Defendants.

INDIANA LUMBERMENS MUTUAL
INSURANCE COMPANY, a corporation
of the state of Indiana,
Plaintiff-Appellant,

v.

INFORMATION SYSTEMS,
INCORPORATED; NETWORKS                    No. 95-2084
CORPORATION; ROMA P. MALKANI;
PREM MALKANI,
Defendants-Appellees,

and

DAVID C. CONDRON; JACK J. MORRIS,
Defendants.

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-93-707-DKC)

Argued: January 29, 1996

Decided: May 1, 1996

Before RUSSELL, WILLIAMS, and MICHAEL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Bobby Dean Melvin, Bethesda, Maryland, for Appellants.
Bernard L. Balkin, SANDLER, BALKIN, HELLMAN & WEIN-
STEIN, Kansas City, Missouri, for Appellee. **ON BRIEF:** Peter J.
McNamara, OBER, KALER, GRIMES & SHRIVER, P.C., Balti-
more, Maryland, for Appellants. Michael J. Blake, SANDLER,
BALKIN, HELLMAN & WEINSTEIN, Kansas City, Missouri;
Gerard P. Sunderland, WHITEFORD, TAYLOR & PRESTON, Balti-
more, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Information Systems & Networks Corporation (ISN) appeals from
the district court's order, dated July 20, 1994, finding that ISN and

2

Indiana Lumbermens Mutual Insurance Company (Indiana) entered into an oral settlement agreement. Indiana separately appeals from the district court's refusal to enforce its order of July 20, 1994, as a judgment. We affirm in both appeals.

I.

On March 9, 1993, Indiana filed suit against ISN, Roma Malkani (president and sole shareholder of ISN), and her husband, Prem Malkani.[1] The suit concerned surety bonds which Indiana had provided for two ISN contracts, one to provide an Automated Access Control System at Kansas City International Airport (KCIA) and another to install a security system for the Port of Oakland. Indiana filed the suit because ISN was engaged in separate lawsuits with KCIA and Oakland, and both KCIA and Oakland had made demands upon Indiana as surety. Indiana's complaint against ISN requested, among other things, that ISN provide Indiana with additional collateral in excess of $4.2 million. ISN counterclaimed, alleging, among other things, that Indiana had charged for unnecessary and unreasonable legal and consulting fees.

On April 28, 1994, while the case was pending, Indiana served a Motion to Enforce Settlement, alleging that the parties had entered into an oral settlement agreement at a meeting on February 25, 1994. In attendance at this meeting for Indiana were David Riese, its vice president; William Piper, an expert witness for Indiana; and Michael Blake, attorney of record for Indiana. Present for ISN were Vera Chawla, its executive vice president; Herbert Rubinstein, its vice president; Ronald Austin, a consultant for ISN; and Joseph Billings, in-house counsel for ISN. Neither Roma nor Prem Malkani were at the meeting. ISN and the Malkanis denied that any settlement agreement was reached at the meeting, so the district court held an evidentiary hearing on July 15, 18 and 20, 1994.

At the hearing ISN claimed that it called the meeting solely to present the merits of its case in the KCIA lawsuit and to seek Indiana's cooperation in that lawsuit. Riese (of Indiana), on the other hand, tes-

_____

[1] Two other named defendants are not parties to these appeals.

3

tified that Billings (of ISN) indicated at the outset that the meeting was "for settlement purposes."

Riese also testified that general settlement discussions took place at the February 25, 1994, meeting. During these discussions he took notes and recorded those areas in which he thought the parties were agreeing. Later in the meeting he composed a list of terms that he entitled "final agreement." He read each item out loud to secure ISN's agreement. After Riese read the first term, Billings (ISN) told Chawla (ISN), "We are settling, we are talking about settling everything." Riese said that after he finished reading the items in his proposed agreement, Billings (ISN) and Piper (Indiana) read back the same items from their respective notes. Riese testified that the following exchange took place next:

> I said to Mrs. Chawla, I said now are you willing to commit to this settlement -- to this framework for settlement? And she says, I am. I says, you're willing to commit? And she says, I am. And I said, we've got a deal.

The parties shook hands and the meeting ended. On the following Monday Riese found urgent phone messages from Chawla at both his office and home.

ISN witnesses testified that most of the meeting was devoted to ISN's presentation of its strategy in the KCIA litigation. They denied that a settlement agreement had been reached. Rubinstein and Austin, for example, testified that Chawla had only committed to negotiate further with Indiana.

ISN introduced evidence that the parties customarily reduced agreements to writing before considering them binding. But several Indiana witnesses testified that, in this case, the oral agreement was simply to be "memorialized" in the form of an order and submitted to the court.

After the hearing the district judge found that the parties had orally agreed to settle the case. She found that Riese's notes contained the terms of the settlement, which she set forth in her order of July 20, 1994, as follows:

1. This case, including all claims and counterclaims BE, and the same hereby IS, DISMISSED upon the following terms agreed to by the parties;

2. ISN will immediately pay to Indiana its unreimbursed fees and expenses incurred as of February 25, 1994, with respect to the two bonds issued by Indiana on behalf of ISN in the current litigation, as itemized between $161,000.00 and $200,000.00;

3. ISN will pay future expenses of VMI and counsel (Michael Blake) as presented in itemized bills. Mr. Blake will provide description of work and approximate costs before proceeding;

4. ISN will attempt to mediate its dispute with Kansas City, and Indiana will encourage Kansas City to mediate with ISN;

5. ISN will continue to maintain in a separate account the amount of One Million Seven Hundred Thousand and no cents ($1,700,000), or some lesser amount of at least One Million Dollars and no cents ($1,000,000) as may be agreed to by Michael Blake and Joseph Billings, in unencumbered liquid corporate assets as per this court's Order of September 28, 1993, to satisfy any of ISN's obligations to Indiana; and

6. Indiana will fully cooperate with ISN in preparation for the Kansas City litigation, and ISN will fully cooperate in the preparation of that case.

Both parties filed post-hearing motions. Indiana asked the court to clarify its July 20 order to specify that it retained continuing jurisdiction, and ISN filed a motion asking the court to reconsider its July 20 order. By order, dated November 3, 1994, the district court denied both motions. ISN appeals the July 20 and the November 3 orders.

On December 12, 1994, Indiana filed a motion to enforce the judgment of the court. Indiana claimed that ISN had refused to comply

5

with a provision of the settlement agreement and asked the district court to issue a writ of execution pursuant to Fed. R. Civ. P. 69 and 70 to force compliance. By order dated April 19, 1995, the district court denied Indiana's motion. On May 10, 1995, the court denied Indiana's motion for reconsideration. Indiana appeals the April 19 and May 10 orders. We consolidated the two appeals.

II.

We turn first to ISN's appeal from the district court's determination that the parties reached a settlement agreement. The district court's decision rests on factual findings which will be upheld unless clearly erroneous. Moore v. Beaufort County, 936 F.2d 159, 162 (4th Cir. 1991).

ISN first argues that the parties merely agreed to a"framework of settlement" (which is unenforceable) rather than a final agreement. We disagree. The district judge found that Riese (Indiana) offered to settle the case when he said he was willing to commit to the terms discussed. Likewise, the court found that Chawla (ISN) accepted when she said she was "willing to commit." The district judge found that Chawla understood that she was committing to a final settlement. There were no words restricting the import of her willingness to "commit." Moreover, earlier in the meeting ISN representatives had discussed who had authority to commit and what stage the settlement discussions had reached. Billings (ISN) stated at the outset of the meeting that the discussions were for settlement purposes. Riese testified that later in the meeting Billings reiterated that the parties were still negotiating. However, after further discussions, Billings informed Chawla that the parties were "talking about settling everything." This progression indicated to the district judge that Chawla understood she was agreeing to a final settlement.

The district judge thoroughly explained why she credited Indiana's witnesses over ISN's. For instance, she considered it significant that at the hearing Billings (ISN) neither produced his notes from the meeting nor testified as to their contents. Yet all Indiana representatives who were at the meeting testified at the hearing. She also noted that Chawla had placed urgent calls on Monday or Tuesday following the meeting. The district judge felt that had there simply been an

6

agreement to negotiate further, there would have been no urgency to the calls. Finally, she found that ISN had a strong motive to settle the case: ISN wanted to enlist Indiana's assistance in the KCIA litigation and avoid battling on two fronts. We think the evidence on which the district court relied and the inferences drawn from it amply support the finding that the parties reached a final agreement.

ISN next argues that the parties did not intend to bind themselves until a written agreement was drafted and signed. ISN says that the parties customarily settled complex cases in writing, not orally. We reject this argument. Riese, Piper and Blake all testified that the parties intended merely to "memorialize" the agreement to which they already considered themselves bound. Moreover, Riese testified that he often settled matters with other parties by oral agreement. We think the district court's finding that the parties considered themselves bound by the oral agreement is not clearly erroneous.

Third, ISN says the purported agreement is invalid because the Malkanis did not agree to the settlement. ISN insists that the district court made no finding that Chawla had authority to bind the Malkanis. We disagree. The district court "conclude[d] as a matter of fact that Ms. Chawla [had] the authority to deal with this litigation." We read this as a finding that Chawla had authority to settle on behalf of all defendants. That finding, given Chawla's role and position, is not clearly erroneous.

Finally, ISN argues that no agreement was reached because the purported terms were too indefinite, vague and incomplete. For instance, the agreement required ISN to pay Indiana between $161,000 and $200,000 for expenses and to maintain an account containing between $1 million and $1.7 million, the precise amount to be negotiated. And it required Indiana to "fully cooperate" with ISN in the KCIA litigation.

Under Maryland law,**2** a contract is not valid unless "the parties express themselves in such terms that it can be ascertained to a reasonable degree of certainty what the agreement meant. If the agree-

_____

**2** The parties agree that Maryland law governs.

7

ment is so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void." Marmott v. Maryland Lumber Co., 807 F.2d 1180, 1183 (4th Cir. 1986) (quoting Strickler Engineering Corp. v. Seminar, Inc., 122 A.2d 563, 568 (Md. 1956)), cert. denied, 482 U.S. 929 (1987). In this case, we think the terms are sufficiently definite. First, with regard to the expenses, the figure of $161,000 was based upon the January 21, 1994, computation which Indiana had submitted to ISN prior to the February 25 meeting. The parties understood that Indiana had incurred additional expenses between January 21 and February 25 which would be paid under the settlement but had not yet been itemized. The parties agreed that the expenses would be capped at $200,000. Second, the requirement that ISN maintain $1.7 million in a separate account was a continuation of an agreement described in a stipulation the parties had filed with the court on September 28, 1993. The terms of the deposit were detailed in the stipulation. Finally, the district court found that "fully cooperate" meant providing ISN access to Indiana's legal and consulting expertise. In addition, we think "fully cooperate" is no more ambiguous than other terms, such as "best efforts," commonly found in commercial contracts. In short, we conclude that the terms of the agreement are sufficiently definite.

III.

We now turn to Indiana's appeal. Indiana first argues that the trial court's order of July 20, 1994 is a judgment, and therefore the court erred by refusing to enforce it pursuant to Fed. R. Civ. P. 69 or 70. Indiana relies on cases which hold that courts have the inherent authority to summarily enforce settlement agreements and enter judgments based upon the agreements. See, e.g., Petty v. Timken Corp., 849 F.2d 130, 133 (4th Cir. 1988). We reject Indiana's argument. Rules 69 and 70 have no application here. Rule 69 prescribes procedures for enforcing "judgment[s] for the payment of money," and Rule 70 addresses judgments directing a party to perform specific acts. The district court's July 20 order neither entered a money judgment against ISN, nor ordered it to perform specific acts. The order simply dismissed the lawsuit based on the settlement. The district court was not obligated to enter the judgment Indiana seeks based upon the agreement merely because it had the authority to do so.

8

Indiana next argues that the district court erred in ruling that it had not retained jurisdiction of the case to enforce the settlement. This argument is meritless. A court may, in its discretion, retain jurisdiction over a settlement agreement by making the parties' obligation to comply with the settlement agreement a part of the dismissal order. See Kokkonen v. Guardian Life Ins. Co. of America, 114 S. Ct. 1673, 1677 (1994). A district court may evidence an intent to retain jurisdiction by including in the dismissal order a separate provision, such as a provision expressly retaining jurisdiction over the settlement agreement, or by incorporating the terms of the settlement agreement in the order. See id. Here, in her denial of Indiana's motion for reconsideration, the district judge stated that she did not intend to retain jurisdiction and did not incorporate the settlement terms in the order. In light of the judge's clear statement of intent, we see no reason to reverse her conclusion that she lacked jurisdiction to enforce the settlement. Thus, as the district judge stated, Indiana's remedy is to file suit for breach of contract or to move to reinstate the original suit pursuant to Fed. R. Civ. P. 60(b)(6). See Fairfax Countywide Citizens Ass'n v. Fairfax County, 571 F.2d 1299, 1302-03 (4th Cir.), cert. denied, 439 U.S. 1047 (1978).

IV.

The district court's decision in each appeal is affirmed.

AFFIRMED

9