In re OR–GROW, INC., and Trash Management Services, Inc., Debtors.

Kevin R. HUENNEKENS, Trustee, Plaintiff,

v.

TRASH MANAGEMENT SERVICES, INC., Global Seafood, Inc., Belinda G. Haynie, Philip J. Haynie II, Philip J. Haynie III, and Richard Payne, Defendants.

Bankruptcy No. 95–34933–T. Adversary No. 96–3170.

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

May 15, 1997.

---

James W. Myart, Jr., Speiser Krause Madole & Mendelsohn, Jackson, San Antonio, TX, for Trash Management Services, Inc., Belinda G. Haynie, and Philip J. Haynie II.

Robert H. Chappell III, J. Stephen Buis, Spotts Smith Fain & Buis, Bruce H. Matson, LeClair Ryan, Richmond, VA, for Trustee.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

On April 7, 1997, the court held a hearing on (1) a motion filed by defendants Trash Management Services, Inc., Belinda G. Haynie, and Philip J. Haynie II to vacate an order entered on January 16, 1997, approving their settlement with the trustee and (2) a motion filed by the trustee to strike the defendants' motion to vacate. After reviewing the evidence presented and considering the oral argument of counsel, the court ruled from the bench and denied both motions. This memorandum opinion supplements the court's bench ruling.

### Procedural History

This bankruptcy case, seemingly innocuous when filed by Or–Grow under Chapter 11 of the Bankruptcy Code on November 15, 1995, has become in the last year a bitter contest over farming rights in the Northern Neck of Virginia. The first hint of trouble arose when the United States Trustee filed a motion to convert the case on March 1, 1996. In that motion, the Trustee expressed his concern that Haynie II, the sole shareholder and president of Or–Grow, had failed to disclose that the right to a crop insurance claim had been assigned to TMS, an entity solely owned by his wife Belinda Haynie.

The court held a hearing on the Trustee's motion to convert on April 9, 1996, at which time Haynie II testified that TMS regularly used farm equipment purchased on credit by Or–Grow. With this practice continuing post-petition, Or–Grow had assigned the claim to ensure that the lienholders would be paid and that TMS could retain access to the machinery. Though troubled by Or–Grow's failure to disclose this assignment, and by the relative informality with which Or–Grow conducted its business dealings, the court ruled that the Trustee's motion would be denied if Or–Grow filed a confirmable Chapter 11 plan within 30 days.

A plan of reorganization was submitted on May 13, 1996. Objections, however, were filed by the United States Trustee, the Internal Revenue Service, Southern States Cooperative, Inc., and Atlantic Waste Disposal, Inc. Or–Grow consequently withdrew its plan and, when a viable alternative could not be formulated, consented to the Trustee's motion. On July 25, 1996, the court entered an order converting the case to one under Chapter 7 of the Bankruptcy Code.

On September 26, 1996, the Chapter 7 trustee filed a complaint alleging that Or–Grow had fraudulently conveyed to the defendants[1] both physical assets and the right to crops which would be harvested that autumn. The trustee also filed a motion for a preliminary injunction which he asked the court to hear on an expedited basis.

On October 1, 1996, the court held a hearing at which the following parties were represented: the trustee, represented by Bruce H. Matson, J. Stephen Buis, and Robert H. Chappell III; TMS and Belinda Haynie, represented by Charles B. Molster III; and Haynie II, represented by William R. Baldwin III. Only two parties were not represented and did not attend: Philip J. Haynie III, who was in school, and Richard Payne, who had not yet been served. The trustee at this time reported to the court that he had

---

1. On January 8, 1997, the trustee filed a notice pursuant to Fed.R.Bankr.P. 7041 and Fed. R.Civ.P. 41(a)(1) voluntarily dismissing his complaint against defendants First Cousins, Inc., Anthony Falls, and Townsend Jackson. For the purposes of this memorandum opinion, then, the court will ignore these three parties.

reached an interim agreement with the parties represented at the hearing which would be presented to the court in the form of a consent order. The court accepted this resolution of the matter and set a status hearing for November 4, 1996.

On October 4, 1996, the court entered the proposed consent order (1) granting a preliminary injunction against TMS, Belinda Haynie, and Haynie II until November 4, 1996, but allowing Haynie II to obtain a hearing on his objection with only a 48-hour notice to the parties in interest, and (2) granting a temporary restraining order against Haynie III and Payne which, if no objections were filed within 10 days, would become a preliminary injunction effective until November 4, 1996.

Over the course of the following month, the parties encountered substantial difficulties in exchanging discovery and negotiating a permanent settlement. TMS, Belinda Haynie, and Haynie II complained that the trustee had not provided adequate notice of depositions and had refused to share with them any information about the status of his investigation. The trustee countered that the defendants had failed to comply with the terms of the preliminary injunction as set forth in the order entered on October 4, 1996.

These and other issues were presented to the court at the November 4, 1996, hearing in the form of the trustee's continuing motion for a preliminary injunction, the trustee's emergency motion to compel depositions, a motion filed by TMS and Belinda Haynie to dismiss the trustee's complaint, and a motion filed by Haynie II to reconsider the order granting the interim preliminary injunction. After considering the oral argument of counsel, the court (1) ordered the parties to comply with expedited discovery requests, (2) extended the interim preliminary injunction until an evidentiary hearing on the trustee's continuing motion and the motion to reconsider could be held on November 22, 1996, and (3) granted the motion to dismiss filed by TMS and Belinda Haynie but gave the trustee 3 days to file an amended complaint.

On November 13, 1996, the court entered an order which embodied the rulings made at the hearing held on November 4, 1996. Two days later, the trustee filed his amended complaint. On November 21, 1996, however, a joint motion to vacate the order entered on November 13, 1996, was filed by TMS, Belinda Haynie, and Haynie II.

The court began the hearing on November 22, 1996, by allowing Baldwin and Molster to argue their motion to vacate. Each asserted that the order, as entered by the court on November 13, 1996, did not reflect the rulings made at the hearing held on November 4, 1996. In particular, Baldwin and Molster suggested that the order gave the trustee more than 3 days to file his amended complaint and failed to direct the trustee to produce his witnesses and his exhibits in an expedited fashion. After considering Matson's response on behalf of the trustee, the court decided to take the motion to vacate under advisement. The court, however, did prohibit the trustee from introducing evidence of any facts not alleged in the original complaint.

Matson then began his direct examination of the trustee. Although the court sustained many of the objections made by Baldwin and Molster to the exhibits offered by Matson, the trustee still was able to recall and to outline the results of his investigation. After Matson concluded his examination, the court ordered a brief recess. Two hours later, the parties reported that a settlement had been reached. Baldwin first read into the record a summary of the terms to which the trustee and the parties not represented by counsel at the hearing—Payne and Haynie III—had agreed. Matson then read into the record a summary of the terms to which the trustee and TMS, Belinda Haynie, and Haynie II had agreed. Once all the parties felt comfortable with the record, the court requested that they submit a proposed consent order.

During the ensuing month and a half, however, the parties could not agree on all the details of their compromise. With no resolution in sight, the trustee filed a motion on January 13, 1997, asking the court to enter his version of the agreement. On January 14, 1997, Baldwin and Molster together filed a motion to withdraw due to their "irreconcilable differences" with TMS, Belinda Haynie,

and Haynie II. On January 16, 1997, the court entered an order granting the trustee's motion to enter the settlement agreement. That same day, the court granted the joint motion to withdraw in an order endorsed by Baldwin, Molster, TMS (by Belinda Haynie), Belinda Haynie, and Haynie II.

On January 27, 1997, James W. Myart, Jr., filed a motion on behalf of himself to appear pro hac vice and a motion on behalf of TMS, Belinda Haynie, and Haynie II to vacate the order approving the settlement. On January 31, 1997, the trustee moved to strike both of Myart's motions. TMS, Belinda Haynie, and Haynie II responded by filing a joint pleading on April 4, 1997, which purported to "ratify" the motion to vacate filed by Myart.

At a hearing held on April 7, 1997, the court first considered Myart's motion to appear pro hac vice and the trustee's motion to strike the pleadings. Local Rule 2090–1(E)(2), in pertinent part, provides:

> An attorney from another state, the District of Columbia or a territory of the United States may appear and practice in cases *upon motion of a member of the Bar of this Court*, provided that in all appearances *said attorney shall be accompanied by a member of this Bar.*"

(Emphasis added.) Not only did the trustee's motion to strike bring this rule to Myart's attention, but the court informally had notified him of its content days before the hearing. Nevertheless, Myart (a Texas attorney not licensed to practice before this court or in the Commonwealth of Virginia) appeared without local counsel and with only counsel for a creditor to "present" his motion to appear pro hac vice. Though troubled by Myart's disregard for the local rules, the court chose to deny the trustee's motion to strike and to permit Myart to appear without local counsel in this one instance.

### Findings of Fact and Conclusions of Law

The first point advanced by the defendant movants in their motion to vacate the order entered on January 16, 1997, is that paragraph 12 of the order includes terms to which the parties did not agree on November 22, 1996.[2] That paragraph provides:

> Haynie II and Mrs. Haynie, jointly and severally, shall make and deliver to the Trustee a promissory note dated as of November 22, 1996, in the principal amount of $150,000.00, with interest at the legal rate, payable in full on July 1, 1997, with monthly payments of interest only beginning in December 1996. This promissory deed of trust note is to be secured by a deed of trust to be recorded against the Withers Granary.

At the hearing held on April 7, 1997, Haynie II testified that his wife had personally guaranteed a promissory note executed in favor of a local bank and secured by a deed of trust on a second granary. With this note still outstanding, they had believed that the trustee was referring to it during the settlement negotiations on November 22, 1996.

■ When asked to enforce or to vacate a purported settlement agreement, a court must make two distinct inquiries: (1) whether the parties in fact have agreed to settle their dispute, and (2) to what terms have the parties consented. *Moore v. Beaufort County, N.C.*, 936 F.2d 159, 162 (4th Cir.1991). The record from the November 22, 1996, hearing clearly reveals that the parties to this proceeding did agree to settle their differences. The only question, then, is whether they agreed to the terms found in paragraph 20 of the order entered January 16, 1997.

■ The Court of Appeals for the Fourth Circuit has ruled that an oral settlement agreement can be, and indeed must be, enforced by a trial court. *Alexander v. Industries of the Blind, Inc.*, 901 F.2d 40, 41 (4th Cir.1990). In such an instance, the court should discern the terms of the agreement by fully considering the testimony of witnesses and by resolving any conflicting testimony. *Id.* Of course, the party seeking to enforce a term of an oral compromise bears the burden of proving that the settlement included that particular term. *United*

---

2. Pursuant to Fed.R.Civ.P. 60(b)(1), made applicable in this adversary proceeding by Fed. R.Bankr.P. 9024, the court may relieve a party from a final order due to "mistake, inadvertence, surprise, or excusable neglect."

*States v. Buckner & Moore, Inc.,* 505 F.Supp. 409, 412 (W.D.Okl.1979).

■ The record from the November 22, 1996, hearing confirms that Matson did not refer in his summary of the settlement agreement to the provisions included in paragraph 20 of the order entered on January 16, 1997. When cross-examined by the trustee at the hearing held on April 7, 1997, however, Baldwin testified that the parties on November 22, 1996, had treated the $150,000.00 note and deed of trust as a material term of their compromise but that a dispute later had arisen over the "reasonable commercial terms" which would govern the note. The court finds this admission, from the attorney who represented Haynie II during his negotiations with the trustee, persuasive. Since Myart countered this testimony only with a self-serving "belief" from Haynie II, the court finds that the parties' compromise did include those terms embodied in paragraph 20 of the order entered January 16, 1997.

In a second argument, Myart asserted that Belinda Haynie and Haynie II had not intended to release the trustee from any claim which might arise under the federal Civil Rights Act.[3] When examined by Myart at the hearing held on April 7, 1997, Haynie II affirmed this fact. The declaration, however, constituted the only evidence offered by Myart in support of his second basis for the motion to vacate.

■ The court notes that a civil rights claim, being founded in the Constitution, can be waived or released only through a voluntary, deliberate, and informed decision.

*Bushnell v. Rossetti,* 750 F.2d 298, 301–02 (4th Cir.1984); *see also Town of Newton v. Rumery,* 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); *Trans–Sterling, Inc. v. Bible,* 804 F.2d 525, 528 n. 3 (9th Cir.1986) (applying this principle to a release included in the settlement of a civil action). Unfortunately, Myart neglected to address this standard in either his pleadings or his oral argument. From the tenor of his question and Haynie II's response, however, the court presumes that the defendant movants are alleging that a "deliberate" and "informed" decision had not been made.

At the hearing held on November 22, 1996, Matson stated on the record: "Philip J. Haynie, II, and Philip J. Haynie, III, and Belinda Haynie will release the trustee and its agents from any and all liability in connection with this case." (Tr. from November 22, 1996, Hr'g at 11.) With this unambiguous term of the compromise announced in open court, and with Belinda Haynie and Haynie II both represented by counsel during their negotiations with the trustee, the court would be hard pressed to conclude that the two defendants had not made a "deliberate" and "informed" decision.[4] Again, having been presented with no contrary evidence other than Haynie II's self-serving testimony at the hearing held on April 7, 1997, the court must reject the second ground for the motion to vacate as well.

■ The last point raised by Myart is that TMS, Belinda Haynie, and Haynie II were coerced into settling their dispute with the trustee.[5] In support of this argument,

---

3. Myart raises this point too under the auspice of Fed.R.Civ.P. 60(b)(1).

4. To do so, the court would be required to find that Molster and Baldwin had failed to advise them with respect to the extent of the release. The Court of Appeals for the Fourth Circuit, however, has held: "When a litigant voluntarily accepts an offer of settlement, either directly or indirectly through the duly authorized actions of his attorney, the integrity of the settlement cannot be attacked on the basis of the inadequate representation by the litigant's attorney. In such cases, any remaining dispute is purely between the party and his attorney." *Petty v. Timken Corp.,* 849 F.2d 130, 133 (4th Cir.1988) (denying an employee's motion to vacate the agreement settling his Title VII action).

5. At the hearing held on April 7, 1997, Myart hinted that this final argument is grounded in Fed.R.Civ.P. 60(b)(3), which enables the court to vacate an order if an adverse party engaged in "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party."

A party moving under Rule 60(b)(3), as a threshold matter, must "demonstrate the existence of a meritorious claim or defense." *Square Constr. Co. v. Washington Metro. Area Transit Auth.,* 657 F.2d 68, 71 (4th Cir.1981). The movant then must "prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense." *Id.; see also Harris v. Mapp,* 719

Belinda Haynie testified that Molster had threatened not to appear on her behalf at the November 22, 1996, hearing unless his fees were paid and that she had been under severe mental and emotional stress since that time. The court, however, notes that Myart introduced no evidence to suggest that Molster continued to threaten her on November 22, 1996, or that he failed in any way to adequately represent her interests during the settlement discussions and at the hearing. In addition, Myart neglected to elicit testimony from any witness who could corroborate Belinda Haynie's testimony or who has sufficient medical expertise to testify that Molster's alleged threat so impaired her mental state that she lacked the capacity to agree to the compromise.[6]

Even if all these concerns were eased, the movants still would have to overcome the holding in *Petty. See supra* note 4. Having voluntarily settled their dispute with the trustee through counsel, Belinda Haynie and TMS cannot now employ the purported inadequacy of their attorney to set aside the compromise unless the agreement itself is "substantially unfair." *Petty,* 849 F.2d at 133. On this record, the court simply has no basis to make such a finding. Therefore, Belinda Haynie's mental and emotion strain do not offer a sufficient ground for vacating the order entered on January 16, 1997.

In a final effort to prove coercion, Haynie II testified that an agent of the trustee had openly displayed his firearm around and had directed racial slurs toward him, his family, and his employees. No witness called by Myart could corroborate these charges, even though Haynie II indicated that at least one other person had heard the slurs and that his children had seen the weapon. Although the court finds Haynie II's testimony distressing, the agent vehemently denied that he had purposefully displayed the firearm or had made any racial slur. The agent testified too that, although he traditionally carries a firearm in his shoulder holster at all times, he stopped wearing the weapon once asked by the trustee to do so.

The court thus is left with the word of one witness against the word of another. Under Fed.R.Civ.P. 60(b)(6), however, the movants bear the burden of proving the "exceptional or extraordinary" circumstances which warrant relief. *Alexander v. Bleau (In re Negrete),* 183 B.R. 195, 197 (B.A.P. 9th Cir.1995), *aff'd,* 103 F.3d 139 (9th Cir.1996); *see also Moeller v. D'Arrigo,* 163 F.R.D. 489, 494 (E.D.Va.1995); *Torres v. Chater,* 950 F.Supp. 661, 664–65 (E.D.Pa.1996). Since Belinda Haynie and Haynie II have failed to carry this burden, the court cannot find that the trustee's agent engaged in coercion or misconduct.[7]

### Conclusion

For the reasons set forth above, the court will enter a separate order (1) denying the motion filed by TMS, Belinda Haynie, and

---

F.Supp. 1317, 1324 (E.D.Va.1989), *aff'd,* 907 F.2d 1138 (4th Cir.1990).

In his motion to vacate, Myart contended that the agent's misconduct had "forced" his clients to execute the settlement agreement on November 22, 1996. He did not maintain, however, that the trustee or his agent committed fraud or engaged in misconduct which caused the court to enter the order on January 16, 1997. In other words, while the purported fraud or misconduct may render the compromise invalid, it did not prevent his clients from "fully and fairly presenting" this defense prior to the court's entry of the January 16, 1997, order. *See Harris,* 719 F.Supp. at 1326–28 (finding the fraud and misconduct alleged in that case to have included the alteration of evidence, the failure to produce discovery, and the suborning of perjury).

Instead, the final argument proffered by Myart must be advanced under Rule 60(b)(6), which authorizes the court to vacate a final order for "any other reason justifying relief." *See Vincent*

*v. Reynolds Mem'l Hosp., Inc.,* 728 F.2d 250, 251 (4th Cir.1984) (holding that an order incorporating a settlement agreement should be vacated under Rule 60(b)(6) when that agreement later is deemed void).

6. The court must also note that the emotional stress to which both Haynie II and Belinda Haynie testified is consistent with the stress which, in this court's experience, most persons undergo when strained financial circumstances require them to make distasteful accommodations with their creditors.

7. Moreover, even if the court accepted that the agent had directed racial slurs toward the Haynies and had carried his firearm to intimidate them, there is no basis in the record for the court to find that this misconduct "coerced" them or their counsel to settle with the trustee on November 22, 1996.

Haynie II to vacate the order entered on January 16, 1997, approving their settlement with the trustee and (2) denying the motion filed by the trustee to strike the defendants' motion to vacate.