UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

POWER SERVICES, INCORPORATED,
        *Plaintiff-Appellant,*

v.

MCI CONSTRUCTORS, INCORPORATED;
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
INCORPORATED,
        *Defendants-Appellees.*

No. 01-2163

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-927-A)

Argued: May 8, 2002

Decided: June 5, 2002

Before WILKINSON, Chief Judge, and WILKINS and
LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Ronald Eugene Gilbertson, BELL, BOYD & LLOYD,
P.L.L.C., Washington, D.C., for Appellant. Richard O'Shea Wolf,
MOORE & LEE, L.L.P., McLean, Virginia, for Appellees. **ON
BRIEF:** Robert J. Sciaroni, Andrew N. Cook, Michael J. Schrier,

BELL, BOYD & LLOYD, P.L.L.C., Washington, D.C., for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Power Services, Inc. brought an action against MCI Constructors and MCI's surety, National Union Fire Insurance Company (collectively "MCI"), seeking to collect payment for services rendered on a construction project. MCI moved for dismissal, alleging that the parties had reached a settlement. The district court determined that a settlement had been reached and dismissed the action. Power Services appealed and we remanded for resolution of certain factual questions. On remand, the district court held an evidentiary hearing and once again determined that the parties had entered into a settlement agreement. Because the district court's factual determination that the parties had reached a settlement was not clearly erroneous, we affirm.

I.

Power Services was an electrical subcontractor on a construction project in which MCI Constructors was the general contractor and National Union was the surety. Power Services brought suit against MCI, seeking payment for extra work performed and for delay and inefficiency costs. The parties disagree as to whether they entered into a binding settlement agreement to settle this case.

On February 21, 2000, Robert Sciaroni, counsel for Power Services, and two Power Services executives went to the office of Charlie Lee, counsel for MCI. The executives were scheduled to be deposed there. Before the depositions began, however, Lee asked Sciaroni if he would be willing to settle the case for $50,000. Sciaroni

made a counter offer of $60,000 to which Lee agreed. The two executives from Power Services consented to this figure and then left without being deposed.

Lee and Sciaroni then prepared a written settlement agreement (the "Agreement") and faxed it to their clients. Sciaroni, who was authorized to sign on Power Services' behalf, signed the Agreement. The parties dispute whether an agreement had been reached at this point. Power Services contends that Lee told Sciaroni on multiple occasions that he did not have the authority to settle the case on his clients' behalf and that the settlement agreement required separate approval from both MCI and National Union. Lee contends, however, that he had settlement authority up to $100,000 and that the president of MCI, to whom National Union had tendered settlement authority, had approved the settlement offer before the parties drafted the Agreement.

Regardless, officials at MCI and National Union also signed the Agreement that day, but Sciaroni was not informed of this. The next day, Sciaroni called Lee to inquire about whether the Agreement had been signed. There is a disagreement regarding what Lee told Sciaroni at this point. Sciaroni asserts that Lee told him that the matter was "still under review." Lee, however, contends that he told Sciaroni only that he did not know whether the Agreement had been signed. Despite the disagreement over what Lee said, both parties agree that Sciaroni informed Lee that Power Services was withdrawing its settlement offer.

Notwithstanding Power Services' attempt to withdraw its settlement offer, MCI moved for dismissal of the court action, claiming that the parties had reached a settlement. Power Services opposed this, alleging that the facts did not support a finding that the parties had entered into a binding agreement. Power Services argued that Lee never told Sciaroni that the offer had been accepted and did not have the authority to accept the offer on MCI's behalf. Therefore, Power Services claimed that it withdrew the offer before MCI accepted it. The district court held a hearing in which Sciaroni and Lee testified as officers of the court, but they were not under oath. The court found that there was a binding oral agreement and dismissed Power Services' suit.

Power Services appealed to this court. We reversed and remanded for an evidentiary hearing to resolve certain material factual disputes. We concluded that while the district court had found that MCI accepted Power Services' offer before it was withdrawn, the court had failed to determine whether Sciaroni had ever been informed of that acceptance. And "[i]f Lee never told Sciaroni what his clients had said, then no contract was formed unless Lee himself had authority to accept the offer on [MCI's] behalf." Since the district court had also failed to resolve the issue of whether Lee had settlement authority, there was simply not enough evidence on the record to support the conclusion that the parties reached an oral agreement.

On remand, the district court held an evidentiary hearing. At the hearing, MCI called two witnesses, Lee and Clement Mitchell, MCI's president and CEO. Power Services called one witness, Sciaroni. After hearing the testimony, the district court first found that Lee had authority to settle the case. Next, the district court determined that the conduct of the parties on February 21 led to the conclusion that all of the parties believed a settlement had been reached. First, February 21 was four days before the discovery cutoff and both parties knew that it was unlikely they would get an extension. Yet, upon agreeing to the $60,000 figure, Lee promptly called off the depositions of two Power Services executives. If Lee or Sciaroni had not believed the case was settled, it would have been more prudent to conduct the depositions.

Moreover, the district court examined the language of the written settlement agreement and noted that instead of saying "this is an offer to settle," which is common when there are on-going settlement negotiations, the Agreement was termed a settlement memorandum and made clear that "[t]he parties have agreed to settle [Power Services'] lawsuit." The Agreement was then signed by Sciaroni. Based on this evidence, the district court held that there was a meeting of the minds and an agreement was reached on February 21. The district court reinstated its earlier order granting MCI's motion to enforce the settlement agreement and to dismiss Power Services' suit. Power Services appeals.

## II.

When asked to enforce a settlement agreement, a court must first "ascertain whether the parties have in fact agreed to settle" and then

"discern the terms of that settlement." *See Moore v. Beaufort County*, 936 F.2d 159, 162 (4th Cir. 1991). If there is a material dispute about whether a settlement agreement exists, the court "must conduct a plenary evidentiary hearing to resolve that dispute." *Columbus-America Discovery Group v. Atl. Mut. Ins. Co.*, 203 F.3d 291, 298 (4th Cir. 2000). On remand, the district court held an evidentiary hearing to resolve the factual disputes concerning what Lee had told Sciaroni regarding whether or not his clients had accepted the offer, and whether Lee had the authority to settle the case. We review the district court's findings of facts under the clearly erroneous standard. *See Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 541 (4th Cir. 2002); *Moore*, 936 F.2d at 162.

The district court's factual determination that the parties entered into a settlement agreement was not clearly erroneous. There is sufficient evidence to support the conclusion that the parties entered into a settlement agreement. Power Services' argument that no settlement was reached rests on Sciaroni's testimony that Lee disavowed settlement authority and failed to sufficiently demonstrate that his clients accepted the settlement offer. Yet the record reflects that Lee had the authority to settle on behalf of his clients up to $100,000. On this issue, the district court found the testimony of Lee and Mitchell to be more credible than that of Sciaroni. And these are precisely the types of credibility determinations that should not be upset on appellate review. *See, e.g.*, *Anderson v. City of Bessemer City*, 470 U.S. 564, 575-76 (1985).

Similarly, we agree with the district court's determination that the parties' actions on February 21 indicated a belief that a binding settlement agreement had been reached. If Lee or Sciaroni believed that the Agreement was nothing more than an offer that had yet to be accepted, it is unlikely that either party would have agreed to cancel the depositions of two Power Services executives four days before the discovery cutoff. It also is difficult to believe that Sciaroni did not interpret Lee's actions in canceling the depositions as an indication that the settlement offer had been accepted.

In addition, Lee and Sciaroni were skilled attorneys who knew or should have known that written offers of settlement usually carry terms such as "this is an offer to settle" or "the parties have agreed

in principal." Instead, in this case, Lee and Sciaroni drafted a settlement memorandum which clearly stated that "the parties have agreed to settle [Power Services'] lawsuit." All indications are that both Lee and Sciaroni believed that they had a binding agreement to settle on February 21. The fact that Sciaroni and Power Services awoke the next morning with a case of buyers' remorse does not change the fact that they had previously made an offer to settle which MCI had accepted.

In reviewing the evidence and hearing testimony, the district court determined that a settlement had been reached. The district court's factual findings were not clearly erroneous. Accordingly, the judgment of the district court is

*AFFIRMED*.